UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONSHA TUCKER,

Plaintiff,

-v-

SEAN COMBS, *et al.*,

Defendants.

24-CV-7772 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Donsha Tucker brings claims against Defendants Daddy's House Recordings Inc., CE OPCO, LLC, Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Entertainment LLC, Bad Boy Productions LLC, Organizational Does 1-10 (together, the "Company Defendants"), and Sean Combs for violations of the New York City Victims of Gender-Motivated Violence Protection Act ("GMVPA") and New York City Administrative Code § 10-1104, as well as for an array of criminal sexual acts under Section 213-c of the New York Civil Practice Law and Rules ("NYCPLR").

Now before the Court is Defendants' motion to partially dismiss Tucker's First Amended Complaint (the "Amended Complaint"). (ECF No. 63.) For the reasons that follow, the Court grants Defendants' motion as to Tucker's GMVPA claim against the Company Defendants. The Court denies the motion as to Tucker's remaining claims.

1

## I. Background

### A. Factual Background[1]

This case is one of several civil lawsuits filed against Sean Combs alleging sexual violence and abuse. (ECF No. 63 ("FAC") ¶¶ 12-19.) Plaintiff Donsha Tucker was an employee of Royal Reigns Management who, through his industry connections, gained access to parties associated with Sean Combs and Combs's company, Bad Boy Entertainment. (*Id.* ¶¶ 34-35.) In October 2021, Tucker attended one such party. (*Id.* ¶¶ 36, 38.) Combs's companies arranged for Tucker to be picked up from the airport and transported to the party in New York City. (*Id.* ¶ 38.) At the party, Tucker consumed one alcoholic drink. Shortly after, he became disoriented and felt the room start to spin. (*Id.* ¶¶ 41-42.) As Tucker sought to leave the party, a male voice instructed him to "hold on" and offered to help him. (*Id.* ¶ 43.) The next thing Tucker remembers is being in a bedroom—unable to move, speak, or otherwise react—while multiple men sexually assaulted him through sodomy and other forced acts. (*Id.* ¶ 44.) One of those men was Sean Combs. (*Id.* ¶ 45.)

### B. Procedural Background

Tucker filed suit against Defendants under the name "John Doe" on October 14, 2024. (ECF No. 1.) Tucker also moved for leave to proceed pseudonymously (ECF No. 21), which the Court denied after considering briefing from all parties (ECF No. 62). On March 11, 2025, Defendants moved to partially dismiss Tucker's complaint (ECF No. 49) and filed an accompanying memorandum in support (ECF No. 51 ("Mem.")). Tucker opposed the motion. (ECF No. 60 ("Opp.").) Defendants filed a reply in further support of dismissal. (ECF No. 61.)

---

[1] The following facts are taken from Tucker's Amended Complaint and are presumed true for the purposes of this motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Following the Court's denial of Tucker's motion to proceed pseudonymously (ECF No. 62), Tucker filed his Amended Complaint, which substituted "John Doe" with his real name (ECF No. 63). Because the Amended Complaint was otherwise substantively identical to Tucker's initial complaint, Defendants requested that the Court apply their original motion to dismiss to the Amended Complaint as well. (ECF No. 65.)

## II.     Legal Standard

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation marks omitted). To state a claim, however, a complaint must do more than assert mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.     Discussion

### A.     Tucker's GMVPA Claims

#### 1.     Against the Company Defendants

New York City's GMVPA provides a civil cause of action for an "injur[y] by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104. The original text of the GMVPA,

3

enacted in 2000, supplied a civil cause of action against only the "individual" who perpetrated a gender-motivated crime of violence. *See* N.Y.C. Admin. Code § 10-1104 (2000). In 2022, the City Council amended the statute ("2022 Amendment") to expand liability to "any party who commits, directs, enables, participates in, or conspires in the commission of" a gender-motivated crime of violence. N.Y.C. Admin. Code § 10-1104; *see S.S. v. Rockefeller Univ. Hosp.*, 236 N.Y.S.3d 145, 147 (1st Dep't 2025). It is under this amended language that Tucker seeks to hold the Company Defendants liable for "enabl[ing]" his rape. (*See* FAC ¶¶ 51-54.) The Company Defendants contend, however, that Tucker's GMVPA claims against them are barred as a matter of law because Tucker's alleged sexual assault took place before the 2022 Amendment was passed, and the Amendment does not apply retroactively. (Mem. at 12.)

The Company Defendants are correct. "As a general rule, a new statute does not apply retroactively to conduct that occurred prior to the statute's enactment." *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 590 (S.D.N.Y. 2012). Moreover, "retroactive operation is not favored by [New York] courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (N.Y. 1998). After Defendants filed their motion to dismiss, New York's Appellate Division squarely addressed the question of the 2022 Amendment's retroactivity. In *S.S. v. Rockefeller University Hospital*, the court concluded that the 2022 Amendment "does not contain any text reflecting an intention to have retroactive effect" and thus does not "apply retroactively." 236 N.Y.S.3d at 147. Absent indication that the New York Court of Appeals would rule differently, the Court is bound by this ruling. *See V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) ("This Court is bound to apply the law as

4

interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.").

Neither party disputes that Tucker's alleged assault occurred before the 2022 Amendment took effect. Nor does Tucker suggest that the Company Defendants directly perpetrated the assault against him, such that their conduct would be actionable under the pre-2022 Amendment GMVPA. Accordingly, because the 2022 Amendment does not apply retroactively, Tucker's GMVPA claims against the Company Defendants are dismissed for failure to state a claim.

### 2. Against Sean Combs

Tucker also brings a GMVPA claim against Sean Combs. (FAC ¶ 49.) To state a claim for a violation of the GMVPA, a plaintiff must plead that: "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). The only prong Defendants appear to contest is whether Combs's alleged rape of Tucker was motivated at least in part by animus against Tucker's gender. (*See generally* Mem.) The Court therefore focuses its analysis on that point.

"Generally, the animus element requires the plaintiff to present 'extrinsic evidence of the defendant's expressed hatred toward [a particular gender] as a group' or allege specific 'actions and statements by the perpetrator during the commission of the alleged crime of violence.'" *Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758, 2021 WL 930710, at *10 (S.D.N.Y. Mar. 11, 2021) (quoting *Breest v. Haggis*, 180 A.D.3d 83, 92-93 (1st Dep't 2019). New York's Appellate Division, however, has recognized that rape is categorically "due, at least in part, to an animus based on the victim's gender" because "[m]alice or ill will based on gender is apparent

from the alleged commission of the act itself" and "[a]nimus inheres where consent is absent." *Breest*, 180 A.D.3d at 94; *see also Engelman v. Rofe*, 144 N.Y.S.3d 20, 32 (1st Dep't 2021). "Courts in this District have recognized *Breest*'s significance on this open doctrinal point," and have repeatedly applied it to sustain claims under the GMVPA that involve coerced sexual activity. *Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899, 2024 WL 3862150, at *13 (S.D.N.Y. Aug. 19, 2024) (collecting cases).

Defendants retort that *Breest*'s holding "should not be extended to male-on-male assaults," because "[w]hile it may be reasonably inferable that a man who sexually assaults women harbors animus towards women, it does not follow that same sex assaults are necessarily based on self-loathing hatred of the assailant's own gender." (Reply at 6.) But Defendants cite no case law that interprets *Breest* so narrowly, and nothing in *Breest* itself suggests that its reasoning applies only to acts of sexual coercion involving members of different genders. To the contrary, *Breest*'s analysis centers on the absence of consent, which demonstrates "the perpetrator's contempt for [the victim's bodily] autonomy" and itself evinces "[m]alice or ill will based on gender." *Breest*, 180 A.D.3d at 94. And *Breest* explicitly recognizes, in contemplating the meaning of the phrase "an animus based on the victim's gender," "the Council's intent that transgender, gay and lesbian victims of gender-based violence [be] covered by [the GMVPA]," *id.* at 89 n.1, which further counsels against adopting the narrow interpretation that Defendants urge.

Other courts in this circuit have applied *Breest* to same-sex assaults and concluded that such assaults, by their nature, demonstrate gender-based animus under the GMVPA. *See Cooper v. Tisci*, No. 25-CV-4758, 2025 WL 3470022, at *8 (S.D.N.Y. Dec. 3, 2025). The Court does the same here. Tucker has clearly alleged the type of coerced sexual activity that would qualify

6

as a gender-motivated act of violence under *Breest*: He claims that Combs raped him while he was drugged and immobilized. (FAC ¶¶ 41-45, 49.) Perhaps no act more paradigmatically expresses contempt for a victim's bodily autonomy, such that gender-based animus may be inferred from its commission. At this early stage of litigation, this is enough to allege a GMVPA claim.

Accordingly, Defendants' motion to dismiss is denied as to Tucker's GMVPA claim against Combs.

**B.      Tucker's Intentional Tort Claim Under Section 213-c**[2]

Tucker brings claims against Defendants for rape, criminal sexual acts, and aggravated sexual abuse under Section 213-c of the NYCPLR, which permits civil claims against "any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of" certain enumerated sexual offenses. NYCPLR § 213-c. (*Id.* ¶ 59.) Specifically, Tucker predicates his Section 213-c claims on rape in the first degree as defined in N.Y. Penal Law § 130.35, a criminal sexual act in the first degree as defined in N.Y. Penal Law § 130.50, and aggravated sexual abuse in the first degree as defined in N.Y. Penal Law § 130.70. (*Id.*)

Tucker appears to advance theories of negligent hiring, retention, and supervision, and alleges that the Company Defendants "created the conditions by which Combs could pursue his tortious conduct" in myriad ways. (Opp. at 7-8.) The Company Defendants argue, in turn, that Tucker's allegations are insufficient to state a claim against them. (*See, e.g.*, Reply at 11-12.) "A cause of action for negligent hiring and retention requires allegations that an employer knew of its employee's harmful propensities, that it failed to take necessary action, and that this failure

---

[2] Defendants do not seek dismissal of Tucker's Section 213-c claims as to Sean Combs. (*See* Mem. at 7, 17.) Accordingly, the Court limits its discussion to Tucker's Section 213-c claims against the Company Defendants.

caused damage to others." *Waterbury v. New York City Ballet, Inc.*, 205 A.D.3d 154, 160 (1st Dep't 2022).

To survive a motion to dismiss, all Tucker must do is plead enough facts to "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. He has done so. Tucker states that the October 2021 party was "associated with Combs and Bad Boy Entertainment." (FAC ¶ 35.) The Company Defendants picked up Tucker at the airport and transported him to the party, where he was offered ecstasy "by associates of Combs Businesses." (*Id.* ¶¶ 38-39.) Tucker also alleges that Combs's agents or employees were responsible for spiking his beverage. (*Id.* ¶ 41.) In addition, Tucker points to a litany of individuals who have sued Combs for physical and sexual abuse, which often took place at events and locations affiliated with Combs's companies and with the assistance of Combs's business associates. (*Id.* ¶¶ 10-20.) Drawing all reasonable inferences in Tucker's favor, the Court concludes that these allegations are sufficient to support Tucker's claim that the Company Defendants were aware of Combs's dangerous propensities, failed to act on that knowledge, and in fact facilitated Combs's abuse of Tucker and others.

Defendants argue, in the alternative, that Tucker's complaint fails to adequately distinguish between the Company Defendants, and therefore falls short of giving each defendant fair notice of Tucker's claim and the grounds upon which it rests. *See* Fed. R. Civ. P. 8(a)(2); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). (Mem. at 13.) But "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y.

July 2, 2015).  Tucker asserts identical claims against a host of companies affiliated with Combs, and he supplies a factual basis for doing so.  This is all that is required by Rule 8.

Moreover, *Atuahene*, on which Defendants rely, is distinguishable.  There, the Second Circuit affirmed the dismissal of an eleven-count complaint that asserted an assortment of constitutional and state common law claims—ranging from trespass and tortious interference to civil rights violations—without specifying which defendants were responsible for which violations.  10 F. App'x at 34; *see also Atuahene v. City of Hartford*, No. 99-CV-631, 2000 WL 433956, at *1-2 (D. Conn. Apr. 18, 2000), *aff'd*, 10 F. App'x 33 (2d Cir. 2001).  Despite being afforded multiple opportunities to clarify his complaint, the plaintiff's amended pleadings "fail[ed] completely to differentiate the conduct of each defendant with respect to each claim." *Atuahene*, 2000 WL 433956, at *2.  None of the obvious defects in *Atuahene* exist in Tucker's Amended Complaint.

Accordingly, because Tucker has stated a claim under Section 213-c, Defendants' motion to dismiss Tucker's Section 213-c claims is denied.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Tucker's GMVPA claims against the Company Defendants are dismissed with prejudice.  Defendants' motion is DENIED as to all other claims.

Defendants shall file an answer to the remaining claims within 14 days after the date of this Opinion and Order.  *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motions at Docket Number 49.

SO ORDERED.

Dated: March 9, 2026
      New York, New York

J. PAUL OETKEN
United States District Judge

9